**FILED IN OPEN COURT**

4.4.2025

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:23-cr-180-HES-SJH

3:25-cr-70-HES-PDB

NOAH MICHAEL URBAN

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Gregory W. Kehoe (KS) (NU) DC

~~Roger B. Handberg~~, United States Attorney for the Middle District of Florida, and E.

Martin Estrada, United States Attorney for the Central District of California, and the

defendant, NOAH MICHAEL URBAN, and the defendant's attorney, Kathryn

Sheldon, mutually agree as follows:

A.   **Particularized Terms**

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Count One, Count Nine,

and Count Fourteen of the Indictment.  Count One charges the defendant with

conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349.  Count

Nine Charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343.  Count

Fourteen charges the defendant with aggravated identity theft, in violation of 18

U.S.C. § 1028A(a)(1).

The defendant will also enter a plea of guilty to Count One of the

(3:25-cr-70-HES-PDB) (CDCA indictment) (KS) (NU) DC

Indictment in Case No. 2:24-cr-00595-JWH, Central District of California, which

charges the defendant with conspiracy to commit wire fraud, in violation of 18

Defendant's Initials NU                              AF Approval  JC
                                                                  fo
                                                                  )H

FILED IN OPEN COURT

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ACKSONVILLE, FLORIDA

U.S.C. § 1349 (the "CDCA Indictment"). The parties agree to jointly seek a transfer of Case No. 2:24-cr-00595-JWH, as to only the defendant, NOAH MICHAEL URBAN, from the Central District of California to the Middle District of Florida, pursuant to Federal Rule of Criminal Procedure 20, for entry of a guilty plea and sentencing in that district.

2.    Maximum Penalties

The maximum penalties for Count One, conspiracy to commit wire fraud and Count Nine, wire fraud, are each a term of imprisonment of not more than twenty years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss arising from the offense, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment, as well as the possibility of an additional term of supervised release.

The maximum penalties for Count Fourteen, aggravated identity theft, is a mandatory minimum term of imprisonment of two years that must run consecutive to any other term of imprisonment imposed, a fine of $250,000, a term of supervised release not more than one year, and a special assessment of $100. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than one year of additional imprisonment, as well as the possibility of an additional term of supervised release.

Defendant's Initials _NU_                    2

The maximum penalties for Count One of the CDCA Indictment, conspiracy to commit wire fraud, is a term of imprisonment of not more than twenty years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss arising from the offense, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100. A violation of the terms and conditions of supervised release is punishable by a maximum sentence of not more than two years of additional imprisonment, as well as the possibility of an additional term of supervised release.

The cumulative maximum penalties for Count One, Count Nine, and Count Fourteen, and Count One of the CDCA Indictment, are a mandatory minimum term of imprisonment of two years plus sixty years, a fine of not more ~~upto~~ [handwritten: *upto DL KS NU*] than $1,000,000, or twice the gross gain or twice the gross loss arising from the offense, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $400, which is due on the date of sentencing. A violation of the terms and conditions of supervised release is punishable by not more than ~~five~~ years of additional [handwritten: *seven DL KS NU*] imprisonment, as well as the possibility of an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

Defendant's Initials *NU*

3

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offenses to which the defendant is pleading guilty.

The elements of Count One, Conspiracy to Commit Wire Fraud, are:

First:    Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the Indictment; and

Second:    The defendant knew the unlawful purpose of the plan and willfully joined in.

The elements of Count Nine, Wire Fraud, are:

First:    The defendant knowingly devised or participated in a scheme to defraud someone by using false pretenses, representations, or promises;

Second:    The false pretenses, representations, or promises were about a material fact;

Third:    The defendant acted with the intent to defraud; and

Fourth:    The defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud.

The elements of Count Fourteen, Aggravated Identity Theft are:

First:    The defendant knowingly transferred, possessed, or used another person's means of identification or identification document;

Second:    The defendant did so without lawful authority; and

Third:    The defendant did so during and in relation to wire fraud, a qualifying predicate offense.

Defendant's Initials __NU__                4

The elements of Count One of the CDCA Indictment, Conspiracy to Commit Wire Fraud, are:

First:   Two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, as charged in the CDCA Indictment; and

Second:  The defendant knew the unlawful purpose of the plan and willfully joined in.

4.    Counts Dismissed

At the time of sentencing, the remaining counts of the Indictment, Count Two through Count Eight and Count Ten through Count Thirteen, as well as the remaining counts of the CDCA Indictment, Count Two and Count Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).  However, the defendant understands that the conduct giving rise to the charges set forth in these counts may be considered relevant conduct by the Probation Office and the Court.

5.    Chapter Two Offense Level

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two Base Offense level be calculated at a Level 7.  Additionally, the United States will argue that the applicable loss amount under U.S.S.G. § 2B1.1(b)(1) is between at least $9.5 million and no more than $25 million, which yields a 20-level enhancement.  The United States at no time will argue that the loss amount exceeds the 20-level enhancement applicable loss amount. The defendant will argue that the loss amount under U.S.S.G. § 2B1.1(b)(1) is between at least $3.5 million but no

Defendant's Initials _NU_          5

more than $9 million, which yields an 18-point enhancement. The defendant at no time will argue that the loss amount is under the 18-point enhancement applicable loss amount. The defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

The parties understand that these recommendations and positions are not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of and guilty.

5.    Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the pleas.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to

Defendant's Initials _NN_    6

USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

6.    Mandatory Restitution to Victim of Offenses of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the victims of the offense. Specifically, the defendant agrees to make restitution to the following individuals in the amounts listed in the below chart:

| Restitution Amount | Victim |
| --- | --- |
| $287,603 | Victim 1 |
| $21,952 | Victim 2 |
| $37,742 | Victim 3 |
| $106,075 | Victim 4 |
| $367,349 | Victim 5 |
| $3,448 | Victim 6 |
| $9,038 | Victim 7 |
| $3,443 | Victim 8 |
| $8,899 | Victim 9 |
| $10,686 | Victim 10 |
| $9,794 | Victim 11 |
| $12,494 | Victim 12 |
| $99,423 | Victim 13 |
| $7,373 | Victim 14 |
| $80,539 | Victim 15 |
| $32,435 | Victim 16 |
| $30,981 | Victim 17 |
| $19,367 | Victim 18 |

Defendant's Initials  _NY_                7

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant also agrees to make full restitution to victims of the offense in the CDCA Indictment. Specifically, the defendant agrees to make restitution to the following individuals in the amounts listed in the below chart:

| Restitution Amount | CDCA Victim |
|---|---|
| $32,302 | Individual Victim 14 |
| $152,205 | Individual Victim 15 |
| $35,647 | Individual Victim 16 |
| $20,093 | Individual Victim 17 |
| $11,842 | Individual Victim 18 |
| $195,768 | Individual Victim 19 |
| $129,586 | Individual Victim 20 |
| $5,381 | Individual Victim 21 |
| $1,668,034 | Individual Victim 22 |
| $57,800 | Individual Victim 23 |
| $34,861 | Individual Victim 24 |
| $207,874 | Individual Victim 25 |
| $7,094 | Individual Victim 26 |
| $17,135 | Individual Victim 27 |
| $97,217 | Individual Victim 28 |
| $4,010 | Individual Victim 29 |

7. <u>Restitution to Persons Other Than the Victim of the Offense of Conviction - Agreed Upon Amount</u>

Pursuant to 18 U.S.C. §§ 3663(a)(3), the defendant agrees to make restitution to the following individuals in the amounts listed in the below chart:

| Restitution Amount | Victim |
|---|---|
| $326,431 | Victim 19 |
| $52,293 | Victim 20 |
| $102,615 | Victim 21 |
| $453,431 | Victim 22 |
| $150,000 | Victim 23 |

Defendant's Initials ⟍⟋⟍⟋

8

| | |
|---|---|
| $84,246 | Victim 24 |
| $520,000 | Victim 25 |
| $15,333 | Victim 26 |
| $517,177 | Victim 27 |
| $37,041 | Victim 28 |
| $3,584,787 | Victim 29 |

Pursuant to 18 U.S.C. §§ 3663(a)(3), the defendant also agrees to make restitution to the following individuals in the amounts listed in the below chart:

| Restitution Amount | CDCA Victim |
|---|---|
| $266,988 | Individual Victim 2 |
| $571,413 | Individual Victim 3 |
| $95,606 | Individual Victim 4 |
| $131,290 | Individual Victim 5 |
| $60,010 | Individual Victim 6 |
| $199,456 | Individual Victim 7 |
| $199,116 | Individual Victim 8 |
| $413,004 | Individual Victim 9 |
| $19,573 | Individual Victim 10 |
| $40,411 | Individual Victim 11 |
| $9,179 | Individual Victim 12 |
| $16,911 | Individual Victim 13 |
| $574,958 | Individual Victim 30 |
| $1,151,516 | Individual Victim 31 |

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The assets to be forfeited specifically include, but are not limited to, the

Defendant's Initials _NU_                    9

following: 1,306,285.53 Dai (DAI) seized from the wallet ending in 38D1f9a; and 800.483 Ethereum (ETH) seized from the wallet ending in 38D1f9a, which assets constitute proceeds and/or are derived from proceeds the defendant admits he obtained, as the result of the commission of Count One, to which the defendant is pleading guilty.

Additionally, the defendant agrees to the administrative forfeiture of the following assets, which constitute proceeds and/or property derived from violations of 18 U.S.C. § 1349 and/or 1343:

1.  43.51754994 Monero (XMR) seized from wallet ending in 12rT5sN;

2.  8.0215721 Ethereum (ETH) seized from wallet ending in b223Cdf;

3.  0.0232488 Bitcoin (BTC) seized from wallet ending in hamtguw;

4.  8,998.10 Dai (DAI) seized from wallet ending in 8A55De3; and

5.  1.120291 Ethereum (ETH) seized from wallet ending in 8A55De3.

6.  936.31358 Monero (XMR) seized from wallet ending 9CU4qG8;

7.  0.085362 Bitcoin (BTC) seized from wallet ending 69mzhmz;

8.  56,121.298 Ripple (XRP) seized from wallet ending yswM6ew;

9.  $27,702.00 in U.S. Currency seized from the residence at 1 Edge Lane, Palm Coast, FL;

10. Miscellaneous Jewelry and

11. Six (6) Watches

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.

Defendant's Initials _MU_                    10

The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the

Defendant's Initials _VU_                    11

defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the

Defendant's Initials _NU_                12

defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

9.    Abandonment of Property

The defendant acknowledges that he has an ownership interest in the following items of property that are in the lawful custody of the United States:

Defendant's Initials _N_U_            13

Miscellaneous Electronics seized from a 2010 Dodge Challenger, and Miscellaneous Electronics seized from the residence at 1 Edge Lane, Palm Coast, Florida.

The defendant understands that he has the right and opportunity to claim the listed property. The defendant hereby knowingly and voluntarily waives all right, title, and interest in the listed property. The defendant waives, releases, and withdraws any claim that the defendant has made with respect to the listed property, and waives and releases any claim that the defendant might otherwise have made to the listed property in the future.

The defendant consents to the vesting of title to the listed property to the United States Government, pursuant to Title 41, Code of Federal Regulations, Section 128-48.102-1. The defendant also consents to the destruction of the property, or other disposition of the property in accordance with law, and without further notice to defendant.

The defendant waives any right the defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to carry out the abandonment, disposition, and/or destruction of the listed property. The defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the listed property, including any such claim for attorney's fees and litigation costs.

The defendant further agrees to hold the United States of America, its

Defendant's Initials NU          14

agents and employees, harmless from any claims whatsoever in connection with the

seizure, abandonment, disposition, and destruction of the listed property.

B.    **Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or

in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any

victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18

U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to

any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all

counts charged, whether or not the defendant enters a plea of guilty to such counts,

and whether or not such counts are dismissed pursuant to this agreement.  The

defendant further understands that compliance with any restitution payment plan

imposed by the Court in no way precludes the United States from simultaneously

pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

including, but not limited to, garnishment and execution, pursuant to the Mandatory

Victims Restitution Act, in order to ensure that the defendant's restitution obligation

is satisfied.

On each count to which a plea of guilty is entered, the Court shall

impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this

obligation is satisfied, the Defendant agrees to deliver a check or money order to the

Clerk of the Court in the amount of $100, *For each Count* $100 KS NU payable to "Clerk, U.S. District Court"

within ten days of the change of plea hearing.

Defendant's Initials _NU_                    15

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the

Defendant's Initials _MM_            18

defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida and Central District of California</u>
        <u>Agreement</u>

It is further understood that this agreement is limited to the Offices of the United States Attorney for the Middle District of Florida and Central District of California and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and

Defendant's Initials _NU_                19

defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _NU_            20

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case or the Central District of California case (Case No. 2:24-cr-00595-JWH) to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _____ day of February, 2025.

ROGER B. HANDBERG
United States Attorney

_____          _____
NOAH MICHAEL URBAN                           JOHN CANNIZZARO
Defendant                                    Assistant United States Attorney


_____          _____
KATHRYN SHELDON                              MICHAEL J. COOLICAN
Attorney for Defendant                       Assistant United States Attorney
                                             Deputy Chief, Jacksonville Division

                                           _____
                                             LAUREN RESTREPO
                                             Assistant United States Attorney
                                             Central District of California

(KS)

(NU)

Defendant's Initials _____          22

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __14__ day of February, 2025.

*Gregory W. Kehoe*

~~ROGER B. HANDBERG~~
United States Attorney

NOAH MICHAEL URBAN
Defendant

JOHN CANNIZZARO
Assistant United States Attorney

KATHRYN SHELDON
Attorney for Defendant

MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

LAUREN RESTREPO
Assistant United States Attorney
Central District of California

Defendant's Initials __NU__                22

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:23-cr-180-HES-SJH
                                            3-25-70-HES-PDB

NOAH MICHAEL URBAN

PERSONALIZATION OF ELEMENTS

As to Count One:

    1.    From August 2022, continuing through at least in or about March 2023, in the Middle District of Florida and elsewhere, did you along with others, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, specifically by stealing cryptocurrency from victims listed in the Indictment?

    2.    Did you know the unlawful purpose of the plan and willfully joined in?

As to Count Nine:

    1.    Did you knowingly devise and participate in a scheme to defraud Victim 5 by using false and fraudulent pretenses, representations, or promises as alleged in the Indictment?

    2.    Were the false pretenses, representations, or promises about a material fact?

    3.    Did you act with the intent to defraud?

Defendant's Initials _NU_

4.      On or about February 16, 2023, did you transmit or cause to be transmitted by wire in interstate commerce a transfer of cryptocurrency from the account of Victim 5 to your cryptocurrency wallet to help carry out the scheme?

As to Count Fourteen:

1.      On or about December 3, 2022, in the Middle District of Florida and elsewhere, did you knowingly transfer, possess, or use other person's means of identification of identification document, specifically the name and credentials of Victim 5 as listed in the Indictment?

2.      Did you do so without lawful authority?

3.      Did you do so during and in relation to wire fraud, specifically in using this information in the commission of the offense described in Count Nine of the Indictment, which included the unlawful transferring of cryptocurrency from Victim 5's Account to your own account?

Defendant's Initials NCU                2

<u>As to Count One of the CDCA Indictment</u>:

1.    From August 2022 and continuing through at least March 2023, in the Central District of California and elsewhere, did you along with others, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit wire fraud, specifically by conducting phishing attacks by sending SMS phishing messages to the mobile telephones of Victim Company employees, using credentials stolen through SMS phishing to access the accounts of Victim Company employees and the computer systems of Victim Companies to steal confidential information, and stealing cryptocurrency from victims listed in the CDCA Indictment?

2.    Did you know the unlawful purpose of the plan and willfully joined in?

Defendant's Initials _NU_                    3

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:23-cr-180-HES-SJH

                                            3.25-cr-70-HES-PDB

NOAH MICHAEL URBAN

## FACTUAL BASIS

From August 2022 through March of 2023, the defendant, Noah Michael
Urban, along with others in the Middle District and elsewhere, was involved in
stealing cryptocurrency from the victims listed in the Indictment. Urban, who also
goes by the alias "Sosa", "Elijah," and "King Bob" among other names, was part of a
group of loosely organized individuals who engage in account takeovers and steal
cryptocurrency from online exchanges. These attacks are often called "SIM swaps."
Urban and his co-conspirators were able to obtain the victims' personally identifiable
information (PII) and then exploit it by attempting to access different types of
cryptocurrency exchanges. They would reset the passwords on those exchanges
defeating a system of password security called two factor authentication (2FA). 2FA
is the preferred method of many companies to ensure account security.

Several email providers and cryptocurrency exchanges allow account holders
to reset the password for their accounts by verifying receipt of a one-time code sent to
their mobile phone number (the "2nd factor" for 2FA, in addition to the password).
By conducting SIM swaps, Urban and his co-conspirators were able to redirect the

Defendant's Initials _NU_

victims' mobile phone number from their legitimate device to a device controlled by Urban and his co-conspirators. This was frequently accomplished through "social engineering," such as tricking a customer service employee at the cellular company into believing that Urban or a co-conspirator was in fact the victim and had purchased a new phone. Once in control of the victim's mobile phone number, Urban and his co-conspirators would be able to receive one-time codes sent by email providers and cryptocurrency exchanges, allowing them to reset passwords for the corresponding accounts.

In Internet browser history for Urban's desktop computer, seized pursuant to a warrant in March 2023 at his then-residence in Palm Coast, Florida, investigators discovered entries showing access to numerous victim email accounts, including various stored passwords for some victims' accounts. Investigators also discovered numerous cryptocurrency wallets created using the free Exodus software on Urban's desktop computer. Transaction history and cryptocurrency tracing for those wallets proved that many of them were used to receive stolen cryptocurrency from victim exchange accounts. Specifically located on Urban's computer was a cryptocurrency wallet that Urban used to store some of the victim's stolen cryptocurrency. In this wallet there was cryptocurrency in the amount of 1,306,285.53 Dai (DAI) from the wallet ending in 38D1f9a; and 800.483 Ethereum (ETH) seized from the wallet ending in 38D1f9a. Both of these cryptocurrencies were obtained illegally by Urban by taking the cryptocurrencies from the victims of the wire fraud conspiracy. Urban

Defendant's Initials NU                        2

obtained these assets as the result of the commission of Count One, to which the defendant is pleading guilty. Investigators seized a total of approximately $2.89MM worth of cryptocurrency from Urban's desktop computer in March 2023 (due to fluctuating cryptocurrency values, the seized virtual assets were recently valued at approximately $3.67MM as of October 16, 2024). Urban admitted in interviews with the FBI that all of the cryptocurrencies found on Urban's computer was a result of Urban and his conspirators illegal wire fraud conspiracy.

As charged in Count Nine and Count Fourteen of the Indictment, Urban illegally used Victim 5's name, email address, credentials, and/or 2FA phone number to access Victim 5's AOL email account in December 2022. Records from AOL confirmed that on December 3 and 4, 2022 there were multiple logins to Victim 5's email account that did not match Victim 5's IP address. The logins were made to Victim 5's email account from Urban's computer using a VPN, which is virtual private network that masks an IP address. Similar logins were made to Victim 5's email account on February 16, 2023. Urban further used his access to Victim 5's email account and 2FA phone number to access Victim 5's Coinbase exchange account in February 2023. Records from AT&T for Victim 5's mobile phone number confirmed that a SIM card change had occurred for the number on February 16, 2023. Emails received by Victim 5 also showed that a new device was confirmed using his AOL email account on February 16, 2023. The new device was using a VPN IP address that URBAN was controlling. Impersonating Victim 5, Urban initiated a transfer of 219.2683 Ethereum, valued at approximately $374,614, from

Defendant's Initials _NU_                3

Victim 5's Coinbase account to his own Exodus cryptocurrency wallet at address 0x42D44bf4dd410D8A2E04112d5E0F77F47160d05F on February 16, 2023. This transaction was identified in the history of an Exodus wallet recovered from Urban's desktop computer in March 2023. In addition to the wallet found on Urban's computer, there was evidence of the VPN that Urban used in order to complete the account takeover.

In February 2023, Victim 5, a resident of the State of Texas, reported to the FBI that he had suffered a compromise of his Coinbase account following a SIM swap of his AT&T mobile phone number. Victim 5 confirmed that his AOL email account was tied to his Coinbase account and that someone could use it to verify a new device. Victim 5 also provided two emails from Coinbase confirming withdrawals of 219.2683 Ethereum across two transactions to external address 0x42D44bf4dd410D8A2E04112d5E0F77F47160d05F on February 16, 2023. In addition to the emails from Victim 5 and the transaction history from Urban's Exodus wallet, FBI agents were able to trace, or follow the cryptocurrency from Victim 5's account to Urban's device. Blockchain tracing software and subsequent records requests also confirmed that some of the stolen cryptocurrency was later used for purchases tied to Urban's known email accounts.

During a May 2023 interview with investigators, Urban estimated that he had personally made several million dollars between January 2021 and March 2023 through cryptocurrency theft, and that he had been involved in the theft of several

Defendant's Initials _N04_          4

million more overall.  Urban stated that most of the funds he had personally made were lost on various online gambling websites, while he had a "few million" on his desktop computer.

## FACTUAL BASIS – CDCA INDICTMENT

From at least August 2022 through March 2023, within the Central District of California, and elsewhere, the defendant Noah Michael Urban, along with Ahmed Hossam Eldin Elbadawy, Evans Onyeaka Osiebo, and Joel Martin Evans, and Tyler Buchanan, and others, knowingly and intentionally conspired with each other to conduct criminal cyber intrusions and virtual currency thefts.  The victims and intended victims included interactive entertainment companies, telecommunications companies, technology companies, business process outsourcing  (BPO) suppliers, cloud communications providers, virtual currency companies, and individuals. Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators, hacked and defrauded Victim Companies and individual victims around the United States, including in the Central District of California.

Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators, would conduct phishing attacks by sending SMS phishing messages to the mobile telephones of Victim Company employees that purported to be from a Victim Company or a Victim Company contracted IT or BPO supplier.  The SMS phishing messages would contain links to phishing websites designed to look like legitimate

Defendant's Initials __    5

websites of a Victim Company or a contracted BPO supplier and lure the recipient into providing confidential information, including account login credentials.

Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators, would then use credentials stolen through SMS phishing to access the accounts of Victim Company employees and the computer systems of Victim Companies, to steal confidential information, including confidential work product, intellectual property, and personal identifying information, such as account access credentials, names, email addresses, and telephone numbers.  In some instances, after gaining unauthorized access to Victim Company computer systems, Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators, would copy confidential databases from Victim Companies and attempt to sell the stolen information to others.

In order to fraudulently gain access to individual victims' virtual currency wallets and accounts, and to bypass two factor authentication security features, Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators, would (i) gain unauthorized access to various online accounts of victims, including email accounts; and (ii) conduct, or cause to be conducted, SIM swaps of individual victims' mobile telephone numbers to devices that the conspirators controlled.

As part of the conspiracy, Joel Martin Evans created software used by Urban, Elbadawy, Osiebo, Buchanan, and other coconspirators, to conduct phishing attacks on Victim Company employees.

Defendant's Initials _N U_                6

As part of the conspiracy, on January 16, 2023, Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators, transmitted or caused to be transmitted SMS phishing messages to the mobile telephones of Victim Company 1 employees, causing at least one Victim Company 1 employee to transmit their credentials via the phishing websites provided in the SMS phishing messages. Urban admits that the intrusions into the victim companies caused damage to the computer systems of Victims Company 1. After the intrusion on January 16, 2023, on a messaging platform, Urban sent messages stating, in part, "I have one of the rarest . . . account in all of history" and " . . . I just hacked htis [sic] one off [Victim Company 1]."

In addition to Victim Company intrusions, Urban, along with Elbadawy, Osiebo, Buchanan, and other coconspirators used information obtained from Victim Company intrusions to identify and gain access to virtual currency accounts and wallets belonging to individual victims to steal virtual currency worth millions of dollars. Urban admits that the conspiracy involved the theft of over $2.6 million worth of virtual currency from at least 16 individual victims.